UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JAMES S.,  :
      Plaintiff,  :
          :
      v.  :   C.A. No. 18-453WES
          :
ANDREW M. SAUL,  :
COMMISSIONER OF SOCIAL SECURITY,  :
      Defendant.  :

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In January 1996, at the age of 33, Plaintiff James S. was involved in a horrendous accident while working as a foreman doing marine construction; a two-ton piling fell on him, nearly killing him and crushing his pelvis and adjacent organs. More than twenty years later, on July 19, 2016, for the first time, he sought disability benefits, applying for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"), as well as for Supplemental Security Income ("SSI") under § 1631(c)(3). In April 2019, his SSI application ended at the reconsideration phase with the finding that he retained the residual functional capacity ("RFC")[1] to perform light work, which rendered him disabled as of his 55th birthday in December 2018, but not before.[2] ECF No. 18-2 at 13-14. However, Plaintiff's DIB claim depended on a finding of disability in the limited period beginning on the date of onset as alleged in his application – January 1, 2002 – and ending with his date-last-insured – December 31, 2003. With no medical evidence evincing any treatment at all during or close in time to the two-

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

[2] The Commissioner represents that Plaintiff did not ask for a hearing to contest this finding and that the time to do so has now run. ECF No. 18-1 at 10 n.6.

year relevant period, and no other evidence pertinent to the relevant period apart from Plaintiff's statements, which were repeated in a post-hearing opinion from a physician who did not treat Plaintiff during the relevant period, the Administrative Law Judge ("ALJ") acknowledged the catastrophic injuries Plaintiff had sustained in the 1996 accident, but found that Plaintiff had failed to establish a severe impairment during the relevant period. Based on this finding, the ALJ denied the DIB claim.

This case is focused only on the ALJ's denial of Plaintiff's DIB claim. Plaintiff contends that the ALJ wrongly rejected, indeed ignored, the opinion of his treating orthopedic surgeon, Dr. Peter Trafton, based on the patently incorrect finding that Dr. Trafton "was not a treating provider and did not treat the claimant for his injuries . . . immediately after his accident." Tr. 26. In reliance on this error, Plaintiff argues, the ALJ performed an improper lay assessment of the significance of the dearth of treatment during the relevant period, resulting in a decision that lacks the support of substantial evidence. Plaintiff asks the Court to vacate the decision for an award of benefits or to remand for proper consideration of the Trafton opinion. Defendant Andrew M. Saul ("Defendant") moves for an order affirming the Commissioner's decision.

The matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entire record, I find that the ALJ certainly made what appears to be a scrivener's error; however, I also find that the error is harmless and that the ALJ's findings are otherwise sufficiently supported by substantial evidence. Accordingly, I recommend that Plaintiff's Motion to Reverse or Remand (ECF No. 17) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 18) be GRANTED.

I.    **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42

U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)). If the Court finds that a judicial award of benefits would be proper because the proof is overwhelming, or the proof is very strong and there is no contrary evidence, the Court can remand for an award of benefits. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001).

## II.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### B. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings). The regulations confirm that, "[w]e will always give good reasons in our notice

5

of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

## III. Background

### A. Medical and Personal History

After the accident and continuing throughout 1996, Plaintiff had more than ten surgeries and serious medical complications, including infections that required aggressive treatment. One of the several surgeons involved in performing these procedures was Dr. Trafton, who is listed as the "primary attending physician" on several records generated between February and July 1996. Tr. 268-584. However, by the end of 1996, Plaintiff had made a remarkable recovery; his bowel function was restored and he was able to walk, albeit limited by neuropathy, chronic weakness and a foot-drop in the left lower extremity. Tr. 53, 67. There is no evidence of any treatment in 1997. In February 1998, he sought treatment for a hernia repair and a minor small bowel obstruction resulting in two brief hospitalizations; otherwise nothing. See Tr. 567-83. Plaintiff is able to read, do mathematics, use a computer and drive short distances. Tr. 43-44.

After February 1998, for more than seven years until November 2005, there is no record of Plaintiff seeking any medical treatment anywhere.[3] During this period, Plaintiff concedes that he was avoiding medical treatment. Tr. 55. Also during this period, specifically in 2000 and 2001, Plaintiff worked as a project manager and earned a total of $33,000. Tr. 68, 203. Plaintiff has testified and presented letters from this employer to establish that the job was made available to him as "a charitable act" because of a family friendship and that he was frequently absent.

---

[3] During the hearing, the ALJ candidly and repeatedly explained that, with no medical treatment at all during or before the limited period in issue, he would not be likely to find any severe impairments. Tr. 55-56, 69-70, 76. The ALJ appropriately pressed Plaintiff and his attorney regarding whether it was possible that anything had been overlooked and provided time post-hearing for the production of more medical records, if any exist. Tr. 54-57, 76-78. Nothing was provided. Nor could Plaintiff recall any treatment for which records were not retrieved. Tr. 54-58.

ECF No. 17 at 81.[4] Otherwise, apart from Plaintiff's subjective statements that his condition remained the same from 1998 until the present,[5] together with the disputed Trafton opinion that relies on these statements, there is no evidence reflecting what impairments or functional limitations might have affected Plaintiff during the period from February 1998 until 2005.

When the treating record resumes in November 2005, Plaintiff initiated a treating relationship with a primary care physician, Dr. William McConnell. Tr. 65. Dr. McConnell appears to have seen Plaintiff only once in November 2005. To the extent that they are pertinent to what is in issue now, Dr. McConnell's notes indicate that Plaintiff told Dr. McConnell about his medical history, confirming the dearth of treatment after 1998, that he had a mild foot-drop caused by neurological damage from the accident and that he claimed he was self-employed. Tr. 243-44. The only ongoing issues related to the accident that Plaintiff described to Dr. McConnell appear[6] to be anxiety, Tr. 243 ("going through divorce – anxious depressed otherwise well"), and the mild foot-drop; Dr. McConnell prescribed medication for anxiety. Tr. 243-44. Plaintiff saw Dr. McConnell once in 2007 and again in 2008. Tr. 246-47. In 2011,[7] Dr. McConnell noted, "middle aged male in no apparent distress," and suggested Aleve for "some

---

[4] The quoted letter, ECF No. 17 at 81, was presented to the Appeals Council but not to the ALJ. Tr. 206. However, the claim that the 2000-2001 job was an accommodation by a family friend is established by an earlier letter and by Plaintiff's testimony. Tr. 36-37, 203. Based on this evidence, Plaintiff argues that this employment must not be found to amount to substantial gainful activity ("SGA") despite its length (nine months) and the amount earned ($33,000). This argument might be well founded. See 20 C.F.R. § 404.1573(c)(6) (work provided as family accommodation is not SGA). If the ALJ's findings regarding this job – that the record fails to establish that it was "an accommodation," but rather "was substantial gainful activity," Tr. 21 n.2 – were material to the outcome of this appeal, I might recommend remand for further consideration of this evidence. However, because Plaintiff never amended his onset date of January 1, 2002, the 2000-2001 job falls into the pre-onset period and is not relevant.

[5] Plaintiff himself contradicted these statements at various points. For example, in his 2016 application, Plaintiff stated, "[a]s I get older it gets harder and harder to get back to work." Tr. 157. He also told the ALJ that, "things were terrible until 2000-ish let's say. Slightly better from 2000 to perhaps 2004." Tr. 67. These contradictions supply support for the ALJ's finding that Plaintiff's statements are not "entirely consistent" with the other evidence in the record. Tr. 25

[6] Dr. McConnell's notes for 2005-2008 are handwritten; parts of them are indecipherable.

[7] From 2011, Dr. McConnell's notes are typed and readable.

7

back pain." Tr. 248. Otherwise, Dr. McConnell treated only anxiety for which he prescribed medication; on examination, except for decreased strength and flexion in the left foot and well healed scars from the many surgeries, Dr. McConnell made all normal findings and noted, "patient without specific complaint . . . encouraged to stay active." Tr. 249.

In 2008, Plaintiff sought medical treatment for what turned out to be serious pneumonia. Tr. 208-32. In 2012, Plaintiff, with a history of chronic smoking and family history of cardiac concerns, was treated at Rhode Island Hospital for myocardial infarction. 234-40.

### B. Procedural Issues

At the hearing, the ALJ invested significant attention in assisting Plaintiff in advancing his application.[8] One issue that the ALJ focused on was Plaintiff's onset date – January 1, 2002. The ALJ challenged Plaintiff's counsel, asking "[a]ny particular reason that you're pegging the AOD as January 1, 2002?" The attorney admitted, "I don't know" and speculated that it may have been chosen by Plaintiff himself, when he made his initial application, based on having worked in 2000 and 2001. Tr. 64. The ALJ urged the attorney to investigate whether it would be appropriate to amend the alleged onset date, for example back to the date of the accident. Tr. 68-70, 77-78. In making this suggestion, the ALJ made clear that "despite the story which is compelling . . . I cannot award benefits because I don't have any - - the medicals are not lining up with the current period under consideration which is '02, '03." Tr. 70. In addition to delaying the decision to afford Plaintiff time to fill the potentially fatal treating gap from 1998 to 2005, the ALJ also postponed the issuance of the decision to allow time for Plaintiff to make a decision about his onset date and to present a timely request for amendment if he decided to do

---

[8] The Court observes that this hearing is a laudable exemplar of an ALJ empathetically and appropriately discharging his duty to develop the record to the benefit of the claimant. See Ribeiro v. Barnhart, 149 F. App'x 7, 8 (1st Cir. 2005) (ALJ has duty to "develop an adequate record from which a reasonable conclusion can be drawn").

8

so. See POMS DI 25501.230 (Amended Alleged Onset Date) (claimant can amend onset date any time up to date of DDS determination).

Post-hearing, the ALJ followed up with a letter to counsel dated August 29, 2017. Tr. 202. The letter points out that Plaintiff's challenge is not only to sustain his burden of proving disability prior to the date-last-insured in 2003 but also to show that the disability continued to the date of application in 2016, since "benefits under Title II are only payable back to one year prior to the application date." Id. In the letter, the ALJ urged Plaintiff to supplement the record by September 15, 2017, with proof showing "continuous disability from a date prior to the claimant's DLI to the present." Id. (emphasis in original).

Plaintiff responded by producing the opinion from Dr. Trafton (discussed *infra*) three days later. He did not ask to amend his alleged onset date. He did not provide any treating records for the period from 1998 to 2005.

Time has exposed the other procedural issues Plaintiff raised in his brief to be classic red herrings. In his motion to vacate or remand, Plaintiff complained that the ALJ erred in pegging January 1, 2000, as the date-first-insured and represented his intent to file a "Sentence Six Motion" to cure the error by introducing evidence of the correct date-first-insured (April 1, 1991). ECF No. 17, at 8 n.4. The problem is that this unambiguous mistake does not matter unless the alleged onset date had been revised, which Plaintiff opted not to do. Plaintiff also represented his intent to include in the "Sentence Six Motion" the request that the Court consider the April 2019 approval of Plaintiff's SSI application. The problem is that this SSI approval does not help Plaintiff with his DIB claim. To the contrary, if considered, the SSI finding of disability would confirm that the ALJ's DIB decision is correct in that the former was based on

the finding that Plaintiff has had the RFC to perform light work, meaning that he was <u>not</u> disabled at any time, until after he turned 55 in 2018. No "Sentence Six Motion" has been filed.

## C. Opinion Evidence

The physicians, psychiatrist and psychologist who reviewed Plaintiff's file at the initial and reconsideration phases of the administrative proceedings all opined that, due to the utter lack of records, no severe impairments were established for the period from onset in 2002 to the date-last-insured in 2003. Tr. 84-85, 91, 92. After pressing Plaintiff hard on this point (the lack of any treatment at all between 1998 and 2005), the ALJ agreed with these conclusions – he afforded these opinions significant probative weight. Tr. 25. The only other opinion is the post-hearing submission written and signed by Dr. Trafton on September 1, 2017. Tr. 585-88. Dr. Trafton is the orthopedic surgeon who was involved closely with Plaintiff's care for a six-month period from February to July 1996 immediately following the accident. Since that time (including during the relevant period), Plaintiff had no treating relationship with Dr. Trafton. According to Plaintiff, by 2017, Dr. Trafton was retired. Tr. 71. The Trafton opinion states that it is based on a "[p]artial review of RIH and Vanderbilt[9] records" and a thirty-minute phone call with Plaintiff. Tr. 585-86. The opinion acknowledges that "the majority of the medical records are missing." Tr. 586.

Dr. Trafton's analysis of Plaintiff's condition falls into four categories. First, more than half of the opinion contains Dr. Trafton's detailed description as a treating provider of Plaintiff's catastrophic injuries and treatment in 1996. Tr. 585-86. This portion of the opinion duplicates what was already in evidence before the ALJ, none of which the ALJ has questioned. See Tr. 70 ("the story . . . is compelling"). Second, Dr. Trafton parrots information provided by Plaintiff

---

[9] Vanderbilt is the rehabilitation facility that Plaintiff entered after he was discharged from Rhode Island in 1996. Tr. 50.

10

during their thirty-minute phone call – these are Plaintiff's statements that, since 1998 "and continuing," Plaintiff has suffered from the same severe symptoms resulting in the same severe functional limitations. Tr. 586-87. Third, Dr. Trafton provides his conclusory opinion that Plaintiff has been "totally disabled by these injuries since 1996." Tr. 588. Finally, while conceding that, "I cannot form an opinion or recommendation for any further treatment," Dr. Trafton tries to explain away the lack of treatment, speculating that, throughout the entire period since 1998, additional treatment would have been futile to alter Plaintiff's condition – "I would strongly doubt that additional treatment, at any time in his course, would have resulted in a materially improved condition." Id.

In the portion of his opinion that regurgitates Plaintiff's statements, Dr. Trafton reported that Plaintiff ended all treatment in 1998 and worked for a while, but was frequently absent due to pain. Tr. 586-87. Based on Plaintiff's report, Dr. Trafton included a detailed function-by-function breakdown of limitations, including limited capacity to sit, stand or walk. Tr. 587. Unsurprisingly, Plaintiff's statements to Dr. Trafton are essentially the same as what he told the ALJ three weeks before.

In his opinion, the ALJ wrote that he "has carefully reviewed the evaluation dated September 1, 2017, by Peter G. Trafton, MD, an orthopedic surgeon." Tr. 26. The decision accurately summarizes the Trafton opinion, correctly noting that the functional limitations described in the opinion are as "reported by the claimant." Id. In an analysis that uses the methodology mandated for the review of the opinions of treating physicians, the ALJ deployed "good reasons," 20 C.F.R. § 404.1527(c), to explain why he afforded the Trafton opinion "minimal/less probative weight." Id. Two of these are well founded: first, the ALJ properly noted that Dr. Trafton confirmed that there was no treatment at all during the relevant period and

11

that, to the extent that the opinion purports to opine to functional limitations existing during that period when Dr. Trafton had no contact with Plaintiff, it is contrary to the overall record; and second, the ALJ rejected the portions of the opinion setting out Dr. Trafton's conclusion regarding the ultimate issue of disability during the relevant period, which applicable law reserves to the Commissioner. Ford v. Colvin, C.A. No. 16-146, 2016 WL 8346520, at *6 (D.R.I. Dec. 28, 2016) ("the ultimate issue of disability . . . is . . . reserved to the Commissioner pursuant to 20 C.F.R. § 404.1527(d)" . . . "[s]uch opinions are not 'medical opinions' within the meaning of 20 C.F.R. § 404.1527, and thus not subject to the treating physician rule"), adopted sub nom. Ford v. Berryhill, 2017 WL 751127 (D.R.I. Feb. 27, 2017).

The problem arises from the ALJ's third reason: "Dr. Trafton was not a treating provider and did not treat the claims for his injuries either immediately after his accident or in the years thereafter." Tr. 26. This statement is only half true. It is accurate to posit that Dr. Trafton had nothing to do with Plaintiff's treatment after 1996 nor did he perform an examination or a file review for the post-1996 period. Therefore, the ALJ rightly found that Dr. Trafton's comments about Plaintiff's ability to function during the relevant period and his speculation about Plaintiff's failure to seek treatment are worth little because they are based only on what Plaintiff told Dr. Trafton during the thirty-minute phone call. However, the portion of the decision asserting that Dr. Trafton was not a treating physician immediately after the accident is simply wrong. So blatant an error is puzzling. The ALJ obviously carefully reviewed the Trafton opinion, which repeatedly refers to Dr. Trafton's direct participation as a member of the 1996 treatment team. Further, during the hearing, the ALJ was repeatedly told that, although Dr. Trafton had retired in 2017, he had been one of Plaintiff's treating surgeons in the immediate

aftermath of the accident in 1996. Tr. 59, 71. And even a superficial look at the medical records reveals Dr. Trafton's key role in performing many of Plaintiff's 1996 surgeries.

## IV. Analysis

Plaintiff's leading argument for remand rests on the contention that the ALJ "completely ignored" the Trafton opinion. ECF No. 17 at 6. More substantively and accurately, Plaintiff relies on the ALJ's patent mistake in writing that Dr. Trafton was not a treating provider immediately after the accident. He contends that this error permeates and infects the entire decision, requiring remand. Neither proposition is availing.

To begin with the obvious, the ALJ did not ignore Dr. Trafton. Nor did he deal with the Trafton opinion as if it was from a non-treating source. Rather, he carefully analyzed it using the methodology that is required for the opinion of a treating physician in that he assigned the opinion specific evidentiary weight and provided specific reasons for the weight chosen. See Arrington v. Colvin, 216 F. Supp. 3d 217, 241 (D. Mass. 2016), aff'd sub nom. Arrington v. Berryhill, No. 17-1047, 2018 WL 818044 (1st Cir. Feb. 5, 2018). If the ALJ had considered Dr. Trafton to be nothing more than a non-treating physician, he would not have been required to assign his opinion a weight or to provide good reasons for declining to adopt its conclusions. See id. Thus, any misunderstanding about Dr. Trafton's status does not matter because the opinion was handled as if it came from a treating source.

Also fatal to Plaintiff's reliance on the Trafton error is the reality that Dr. Trafton was not a treating physician with respect to the relevant 2002-2003 period. No one (certainly not the ALJ) disputes that Plaintiff was fully disabled during the 1996 period when Dr. Trafton was on the treating team. What matters is the period after, when Dr. Trafton was long out of the picture and the treating record goes utterly silent. Not only did Plaintiff seek no treatment during this

period, but the first records following this period (from 2005 to 2011) reflect the notes of Plaintiff's primary care physician that he was self-employed and "without specific complaint." Tr. 243, 249. For the relevant period, as the ALJ correctly observed, Dr. Trafton was acting not as a treating source, but rather as an amanuensis, simply recording Plaintiff's subjective statements regarding his claimed symptoms and limitations.

The third problem with treating the ALJ's palpable mistake as substantive and pervasive is that the error makes no sense. The record before the ALJ repeatedly made clear – during the testimony at the hearing, in page after page from the medical record, and repeatedly in the Trafton opinion – that Dr. Trafton was a key member of the 1996 surgery team. Further, the ALJ's colloquy and questions at the hearing, as well as his analysis in the decision, reflects thorough preparation and a deep understanding of the facts pertinent to Plaintiff's application. And the ALJ made clear that he had carefully reviewed the Trafton opinion; if he had, it would have been impossible for him to miss Dr. Trafton's repeated descriptions of his personal involvement in Plaintiff's care during 1996.

Viewed from this perspective, it is plain to the Court that the ALJ's mistake is not a substantive error that taints the entire decision. Rather, it is a scrivener's error that does not require reversal because it is apparent that ALJ clearly understood that the Trafton opinion needed to be, and was, analyzed as one that came from a treating source. Cruz o/b/o Fonseca v. Colvin, C.A. No. 14-526ML, 2016 WL 1068860, at *10 (D.R.I. Feb. 18, 2016) (discussing scrivener's error), adopted sub nom. Cruz v. Colvin, 2016 WL 1069059 (D.R.I. Mar. 17, 2016); Hudon v. Astrue, Civil No. 10-cv-405-JL, 2011 WL 4382145, at *4 (D.N.H. Sept. 20, 2011) (citing Douglas v. Astrue, C/A No. 1:09-1349-CMC-SVH, 2010 WL 3522298, at *3-5 (D.S.C. Sept. 3, 2010) (collecting cases regarding scrivener's error)). For the same reason, I find that the

error is plainly harmless in that it does not impact the ALJ's correct conclusion that Dr. Trafton had nothing to do with Plaintiff's treatment after the end of 1996 and therefore could not give a treating source opinion on either Plaintiff's limitations during the relevant period or the significance of the lack of treatment. Flood v. Colvin, No. 15-2030, 2016 WL 6500641, at *1 (1st Cir. Oct. 20, 2016); Heidi M. v. Berryhill, C.A. No. 17-412PAS, 2018 WL 6788034, at *2 (D.R.I. Dec. 26, 2018) ("If the likely outcome on remand is clear and the same as that reached by the ALJ, the error is harmless and the court should uphold the denial of benefits.").

Plaintiff's other claim of error is that, by failing to adopt what Plaintiff describes as Dr. Trafton's "uncontroverted medical opinion" that further treatment would not have improved Plaintiff's condition, the ALJ impermissibly substituted his own view that the lack of further treatment is probative of lack of disability. In support of this argument, Plaintiff relies on Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999), in which the court vacated an ALJ's decision because he substituted his own lay views for the "uncontroverted medical opinion" of the claimant's treating physician.

There are two problems with this argument.

First, Dr. Trafton did not provide an "uncontroverted medical opinion." To the contrary, Dr. Trafton wrote that he could not form such an opinion "[i]n the absence of diagnostic studies." Tr. 588. Rather, he stated: "I cannot form an opinion or recommendation for any further treatment, but I would strongly doubt that additional treatment, at any time in his course, would have resulted in a materially improved condition." Id. This equivocal statement is far from the "uncontroverted medical opinion" relied on in Nguyen. Nor does Dr. Trafton's statement directly clash with the ALJ's finding regarding the significance of the lack of treatment: Dr. Trafton's speculation focused on whether treatment might have "resulted in a materially

15

improved condition," while the ALJ focused on whether Plaintiff really had the intense symptoms he described in that such symptoms would normally cause a claimant to seek treatment. The ALJ's conclusion does not address whether treatment would have materially improved Plaintiff's underlying condition.

Second, the ALJ did not commit the error of engaging in lay interpretation of raw medical data, which was condemned in Nguyen, 172 F.3d at 35. Rather, as endorsed in Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765 (1st Cir. 1991), the ALJ was acting well within permissible bounds in finding the complete lack of treatment to be evidence supporting his decision to discount Plaintiff's statements that severe symptoms persisted unchanged from 1998 to the present. Id. at 769 (ALJ may rely on gap in treatment as evidence in conflict with claimant's allegations of unrelenting pain, which permits inference that claimant would have secured more treatment had his pain been as intense as alleged). Here, Plaintiff's significant treatment gap is more than sufficient to support the ALJ's Step Two finding of nonseverity. See Jessica M. v. Berryhill, No. 17-464, 2018 WL 6731549, at *5 n.8 (D.R.I. Nov. 7, 2018) ("at Step Two, ALJ may base finding of nonsevereity on claimant's failure to seek treatment for much of alleged disability period"). As the ALJ told Plaintiff at the hearing, "it may be that you'd be able to do some sort of sedentary work, I don't know." Tr. 68. At a phase where the burden to prove that his impairment was severe rests on Plaintiff, Freeman, 274 F.3d at 608, the ALJ cannot weave a severity finding "out of thin air." Virgen C. v. Berryhill, C.A. No. 16-480 WES, 2018 WL 4693954, at *2 (D.R.I. Sept. 30, 2018).

Based on the foregoing, I find that the ALJ's error regarding Dr. Trafton's status in 1996 is the sort of obvious mistake that does not require remand, as well as that, in the context of this

case, it is harmless.  Otherwise, I find that the ALJ properly applied the law to the substantial evidence of record and that his decision should be affirmed.

## V. Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion to Reverse or Remand (ECF No. 17) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 18) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 2, 2019